2004 UT App 217

**STATE of Utah, Plaintiff and Appellee,**

v.

**Trent TUCKER, Defendant
and Appellant.**

No. 20020939–CA.

Court of Appeals of Utah.

July 1, 2004.

Paul Gotay, Haskins & Associates, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Jeanne B. Inouye, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, Associate P.J., ORME and THORNE, Jr., JJ.

## OPINION

THORNE, Judge:

¶ 1 Trent Tucker appeals from a conviction, by jury, for murder, a first degree felony, in violation of Utah Code Annotated section 76–5–203 (1999). We affirm.

## BACKGROUND [1]

¶ 2 Tucker shared a residence with at least four other individuals, including his father and his father's girlfriend, Phyllis Coreen Lenear Agar. On February 9, 2001, Tucker and several other persons, including Agar, were drinking in the residence. A fight broke out, during which Tucker armed himself with a pistol. One of Agar's friends assaulted Tucker and pistol-whipped him with Tucker's own gun. After the assault, Tucker retrieved the pistol, took Agar into a bedroom, and confronted her about her friend's behavior. During this confrontation, Tucker shot Agar once in the face, killing her.

## ISSUES AND STANDARDS OF REVIEW

¶ 3 Tucker raises evidentiary and confrontation issues challenging the State medical examiner's classification of Agar's death, and certain testimony of the State's firearms expert. " 'A trial court has broad discretion to admit or exclude evidence and its determination typically will only be disturbed if it constitutes an abuse of discretion. A trial court abuses its discretion if it acts unreasonably.' " *State v. Comer*, 2002 UT App 219,- ¶ 11, 51 P.3d 55 (quoting *State v. Whittle*, 1999 UT 96,¶ 20, 989 P.2d 52), *cert. denied*, 59 P.3d 603 (Utah 2002). Whether testimony was admitted in violation of a defendant's right to confrontation is a question of law

---

1. " 'On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on ap-  peal.' " *State v. Bluff*, 2002 UT 66,¶ 2, 52 P.3d 1210 (quoting *State v. Daniels*, 2002 UT 2,¶ 2, 40 P.3d 611), *cert denied*, 537 U.S. 1172, 123 S.Ct. 999, 154 L.Ed.2d 914 (2003).

that we review for correctness. *See State v. Calliham,* 2002 UT 87, ¶ 31, 57 P.3d 220.

¶ 4 Tucker next challenges the jury instructions as they pertain to the jury's consideration of lesser-included offenses. " ' "[T]he propriety of a jury instruction presents a question of law" ' which we review for correctness." *State v. Fisher,* 972 P.2d 90, 99 (Utah Ct.App.1998) (citations omitted).

¶ 5 Tucker also challenges the jury verdict, arguing insufficiency of the evidence presented at trial. So "long as there is some evidence and reasonable inferences to support the jury's verdict, we will not disturb a jury's findings." *State v. Bradley,* 2002 UT App 348, ¶ 52, 57 P.3d 1139.

¶ 6 Finally, Tucker challenges the trial court's denial of his motion for new trial based on newly discovered evidence. "A trial court has discretion in determining whether to grant or deny a motion for a new trial, and we will not reverse a trial court's decision absent" a conclusion that the trial court has exceeded its permitted range of discretion. *State v. Harmon,* 956 P.2d 262, 265–66 (Utah 1998).[2]

## ANALYSIS

### I. Medical Examiner's Testimony

¶ 7 At trial, the State's medical examiner, Dr. Edward M. Leis, testified regarding his classification of Agar's death as a "homicide" for statistical purposes. Leis defined "homicide" as a "deliberate act of one individual leading to the death of another individual," and stated that he classified Agar's death as a homicide based on the autopsy results and the investigative information available to him. Upon cross-examination, Leis stated several times that he made no determination about the shooter's intent.

¶ 8 Tucker raises three issues pertaining to Leis's testimony. First, Tucker argues that Leis's testimony, classifying Agar's death as a "homicide" by "deliberate act," violated rule 704 of the Utah Rules of Evidence. Second, Tucker argues that Leis made his homicide classification based upon inadmissible hearsay evidence. Third, Tucker argues that the trial court improperly limited his cross-examination of Leis. We are unpersuaded by any of these arguments.

■ ¶ 9 Rule 704 states that "ultimate issues [such as mental state or condition of a defendant] are matters for the trier of fact alone." Utah R. Evid. 704(b). Taken in isolation, Leis's classification of Agar's death as a homicide appears to address Tucker's mental state insomuch as Leis defined "homicide" as the "deliberate act of one individual leading to the death of another individual." However, Leis clarified that the homicide classification was one of only five statistical classifications employed by the medical examiner's office,[3] and that based upon the autopsy findings and the investigative information available to him, Agar's death fit the criteria for a homicide. Leis further testified that intent is not an element in making such classifications, and that "[i]t would be up to a jury to decide whether they feel there was any intent and what degree of intent." This clarifying testimony highlights that Leis was not testifying as to Tucker's state of mind; therefore, his testimony did not violate rule 704.

■ ¶ 10 Tucker's second argument, that Leis's homicide classification rested in part on the impermissible hearsay statements of others, is similarly without support. Under the Utah Rules of Evidence, an expert witness may offer an opinion based on facts and data made known to him outside of trial. *See* Utah R. Evid. 703. Such information need not be admissible in evidence so long as it is

2. Tucker also asserts that the trial court judge improperly answered a jury question outside of the defendant's presence. However, Tucker provides no citation to the record or any evidence regarding the substance of this alleged exchange. Under these circumstances, we decline to address this issue. *See State v. Wulffenstein,* 657 P.2d 289, 293 (Utah 1982) ("When a defendant predicates error to [an appellate court], he has the duty and responsibility of supporting such allegation by an adequate record. Absent that record, defendant's assignment of error stands as a unilateral allegation which the review[ing] court has no power to determine.").

3. The five statistical classifications are natural death, suicide, accident, homicide, and undetermined.

"of a type reasonably relied upon by experts in the particular field in forming opinions." *Id.; cf. State v. Schreuder,* 726 P.2d 1215, 1224 (Utah 1986) (allowing psychiatrist to base opinion on patient's potentially "distorted and self-serving" statements). Here, at the preliminary hearing, Leis testified that medical examiners regularly rely upon investigative information when forming their opinions. This practice is also supported in case law throughout the United States that examines this issue. *See, e.g., Sippio v. State,* 350 Md. 633, 714 A.2d 864, 874–75 (1998) (permitting medical examiner's opinion based upon facts determined by examiner as well as relevant information obtained from reliable police source); *State v. Stewart,* 643 N.W.2d 281, 294 (Minn.2002) (permitting testimony based upon autopsy findings and information provided by police); *cf. State v. Mead,* 2001 UT 58,¶¶ 8–13, 35–41, 27 P.3d 1115 (discussing change in medical examiner's cause of death certification upon applying fact pattern presented by police to known physical evidence). We conclude that Leis's opinion, based upon the autopsy results and facts obtained from routinely reliable police sources, was properly admitted and does not present a hearsay problem.

¶ 11 Finally, Tucker claims the limits that the court imposed upon his cross-examination of Leis violated Tucker's rights under the Confrontation Clause of the United States Constitution. "The right of cross-examination is 'one of the safeguards essential to a fair trial,' " *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965) (quoting *Alford v. United States,* 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931)), and has been found to be particularly important in establishing the reliability of expert opinions. *See Schreuder,* 726 P.2d at 1224–25. Although a cross-examiner is permitted wide latitude in exposing a witness's potential bias, "the right of cross-examination is not without limitation." *State v. Hackford,* 737 P.2d 200, 203 (Utah 1987) (citations omitted). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination. . . ." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

¶ 12 The trial court's "limits" on Tucker's cross-examination of Leis consisted of precluding questions that sought Leis's opinion on a shooter's mental state or intent in various hypothetical situations. In light of Leis's testimony that intent was not a factor in classifying Agar's death, and that intent is a question for the jury, we see no error in the trial court's rulings. Admission of this testimony would have added nothing to the jury's understanding of Leis's classification of Agar's death, and could potentially have led the jury to believe that Leis was testifying about Tucker's mental state in violation of Utah Rule of Evidence 704(b). The trial court's limitation of the testimony was well within its "wide latitude . . . to impose reasonable limits on . . . cross-examination." *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435.

## II. Firearms Expert's Testimony

¶ 13 Tucker next challenges certain testimony of the State's firearms expert, Nicholas J. Roberts. Roberts was a last-minute substitute for the State's initial firearms expert, who was unavailable for trial. Tucker and the State reached an agreement that Tucker would not object to Roberts's late-noticed testimony so long as Roberts's testimony was limited to the physical operation of Tucker's gun. Roberts testified about the physical operation of the gun, including the steps necessary to fire a single-action revolver. Roberts also testified extensively, without objection by Tucker, as to the expulsion of hot gases from the front and sides of the revolver upon firing. Near the end of his direct examination, responding to a question as to whether the gun could fire during a "tug-of-war" over the gun, Roberts testified that "[i]f two people were playing tug-of-war with this gun that I checked, this gun would still have to have had its trigger pulled to have been fired. And there would be burning of somebody. Somebody would be burned."

¶ 14 Tucker moved to strike Roberts's statement about somebody being burned as beyond the scope of the notice agreement, and the trial court granted the motion. With

the express consent of Tucker's counsel, the court instructed the jury to disregard Roberts's testimony about the potential for burning as a result of the gun's discharge. Later, after the jury's guilty verdict, Tucker raised the issue again in a motion for new trial, which the court denied. Tucker now complains that the testimony resulted from prosecutorial misconduct and that the court's curative instruction to the jury was insufficient to correct that misconduct.

¶ 15 Tucker provides no support for his assertion that the "burning" testimony was deliberately elicited by the prosecutor, and the record supports the opposite conclusion. Roberts appears to have volunteered the "burning" comments in response to the State's question about whether the gun could fire during a tug-of-war between two people. In the absence of any evidence of prosecutorial misconduct, we review the trial court's denial of Tucker's motion for new trial for abuse of discretion. *See State v. Harmon*, 956 P.2d 262, 265–66 (Utah 1998).

¶ 16 Looking at the totality of the circumstances, the trial court did not exceed its permitted range of discretion in denying Tucker a new trial based on the "burning" testimony. Tucker allowed extensive testimony regarding the escape of hot gases from the front and sides of the revolver to come in without objection. Roberts's later unsolicited observation that someone wrestling for the weapon as it was fired would be burned by those gases adds little in the way of expert opinion to what had already been elicited without objection. Nevertheless, upon Tucker's motion and with his consent, the trial court instructed the jury to ignore Roberts's comments regarding burning. Finally, Tucker fails to identify record evidence informing the jury of the presence or absence of burn marks on Tucker's or Agar's hands, making it unlikely that the jury could draw any improper conclusion from Roberts's remark. Under these circumstances, we fail to find an abuse of discretion on the part of the trial court judge in its limiting instruction to the jury or its refusal to grant Tucker's motion for a new trial on this issue.

### III. Jury Instruction on Order of Deliberation

¶ 17 Tucker next argues that the trial court committed plain error in instructing the jury that they must "unanimously agree that the evidence has failed to establish any of the elements of Murder" before they could consider the lesser-included offense of negligent homicide. Tucker now claims that the instruction precluded the jury from considering negligent homicide in the event of jury disagreement on whether the State had proven each element of the murder charge.

¶ 18 Tucker's characterization of the challenged instruction is inaccurate. The challenged instruction neither required nor prohibited any particular order of deliberation on the part of the jury. Instead, the instruction stated that "[t]he following is a *suggested but not required* order of deliberation to guide you in considering your verdict options." (Emphasis added.) *See State v. Gardner*, 789 P.2d 273, 284 (Utah 1989) (approving of jury instructions that suggest, but do not require, an order of deliberation). Further, the challenged instruction addressed only two possibilities—a unanimous vote either to convict or acquit on the murder charge—and did not speak to the possibility of jury disagreement on one or more elements of the murder charge, the situation complained of by Tucker.

¶ 19 In light of the foregoing, Tucker has not identified any error in the challenged instruction, much less the obvious error required under a plain error analysis. *See State v. Casey*, 2003 UT 55,¶ 44, 82 P.3d 1106; *State v. Powell*, 872 P.2d 1027, 1031 (Utah 1994). Accordingly, we reject Tucker's claim that the giving of the instruction was plain error.

### IV. Sufficiency of the Evidence

¶ 20 Tucker next alleges that there was insufficient evidence to support his conviction. "[T]o reverse a jury verdict, we must find that 'the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.' " *State v. Bradley*, 2002 UT App 348,¶ 52, 57 P.3d 1142 (quoting *State v. Heaps*, 2000 UT 5,¶ 19,

999 P.2d 565). "Therefore, [as] long as there is some evidence and reasonable inferences to support the jury's verdict, we will not disturb a jury's findings." *Id.*

¶ 21 Tucker's own testimony about events on the day of the shooting provides more than enough evidence to support the jury's verdict. Tucker testified that he had been angry with Agar earlier in the day and that an altercation had taken place in which Tucker had cursed at Agar and pushed her out of his room with such force that she fell back onto a set of stairs. Later, after the fight with Agar's guests, Tucker summoned Agar to the bedroom and confronted her about her friends' behavior. Tucker took the gun with him, and he testified that he probably cocked the gun himself at some point. Additionally, Tucker threatened to "take care of" one of Agar's friends, who had just beaten him. Tucker agreed that the gun was in his hand, right by Agar's face, only an inch or two from her eye. Most critically, Tucker admitted that he shot Agar.

¶ 22 In light of this testimony, there is evidence to support the jury's decision that Tucker "intentionally or knowingly" caused Agar's death, or, intending to cause serious bodily injury to another, committed "an act clearly dangerous to human life" that caused Agar's death. Utah Code Ann. § 76-5-203(2)(a)-(b) (1999). We do not find the jury's decision to be either unreasonable or unjust, and we reject Tucker's insufficiency of the evidence argument.

### V. Newly Discovered Evidence

¶ 23 After the jury's verdict, Tucker moved for a new trial on the grounds of newly discovered evidence. This evidence consisted of the affidavit of Barbara Penman stating that she had observed Agar with Tucker on the day of the shooting; that they appeared to be drinking together happily; that there were no marks on Agar's neck; and that Agar denied that Tucker had choked her.

¶ 24 Tucker argues that this evidence contradicts the testimony of Detective Kelly Kent regarding statements made by Jeremy Kettler, who lived with Tucker and was present in the home on the day of the shooting.

Kent testified that Kettler had told him that he had observed Tucker arguing with and choking Agar several hours before Agar's death. Tucker argues that Penman's affidavit contradicts Kettler's alleged statements and corroborates Tucker's own version of the events of the morning of the shooting. Penman's affidavit also contradicts the testimony of the medical examiner, Dr. Leis, that marks consistent with strangulation were found on Agar's neck. The State used the testimony of Kent and Leis to support its theory that Tucker had choked Agar on the morning of the shooting.

¶ 25 A trial court has discretion in determining whether to grant or deny a motion for a new trial, and we will not reverse a trial court's decision absent a conclusion that the trial court has exceeded its permitted range of discretion. *See State v. Harmon,* 956 P.2d 262, 265–66 (Utah 1998). To warrant a new trial, "newly discovered evidence (1) must be such as could not with reasonable diligence have been produced at trial, (2) must not merely be cumulative, (3) must not be used solely for impeachment purposes, and (4) must be such as to render a different result probable on retrial." *Julian v. State,* 2002 UT 61, ¶ 14, 52 P.3d 1168; *see also State v. James,* 819 P.2d 781, 793 (Utah 1991). Penman's affidavit fails to meet at least two of these requirements, rendering the trial court's decision well within the bounds of its permitted discretion.

¶ 26 First, Tucker did not call Penman as a trial witness although her identity and relationship to the actors and the crime scene were known to him. Tucker has presented no reason why Penman's testimony could not, with reasonable diligence, have been produced at trial. Second, Penman's proposed testimony is not contradictory to the State's theory of a prior altercation between Tucker and Agar, particularly in light of Tucker's own testimony that an altercation did occur. Under these circumstances, Tucker has not shown that Penman's testimony is newly discovered, or that it would likely result in a different outcome upon retrial.

¶ 27 Tucker has shown neither that Penman's affidavit constitutes newly discovered

evidence, nor that it would likely have led to a different result upon retrial. Accordingly, the trial court did not abuse its discretion in denying Tucker's motion for a new trial.

## CONCLUSION

¶ 28 We conclude that no error arose from the testimony of the State's medical examiner or its firearms expert, nor is plain error apparent in the challenged jury instruction. We also conclude that there was sufficient evidence to support Tucker's conviction. We further conclude that the trial court properly denied Tucker's motion for new trial on the grounds of newly discovered evidence. Accordingly, we affirm Tucker's conviction.

¶ 29 I CONCUR: RUSSELL W. BENCH, Associate Presiding Judge.

¶ 30 I CONCUR, EXCEPT FOR SECTION III, IN WHICH I CONCUR IN THE RESULT ONLY: GREGORY K. ORME, Judge.