2022 UT App 72

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KENNETH RAY HOLSOMBACK,
Appellant.

Opinion
No. 20191089-CA
Filed June 9, 2022

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 181910152

Herschel Bullen, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

MORTENSEN, Judge:

¶1     Kenneth Ray Holsomback had just been transferred to a gang unit at the Utah State Prison and had been placed in a cell with one other prisoner (the cellmate). A few hours later, a fight broke out between Holsomback and the cellmate. Holsomback inflicted three deep puncture wounds to the cellmate's back. A search of the cell turned up a homemade knife-like weapon in the toilet. A jury found Holsomback guilty of aggravated assault by a prisoner, possession of a prohibited item, and obstruction of justice. One of the convictions was also enhanced owing to Holsomback's status as a violent habitual offender and use of a dangerous weapon. Holsomback now complains that the State

presented insufficient evidence to support his convictions, along with other claims that one jury instruction and several verdict forms were defective. We affirm.

## BACKGROUND

### *The Incident*

¶2    One day in August 2018, sometime before 2:00 p.m., Holsomback was transferred to a unit at the Utah State Prison set aside for housing gang members and inmates identified as a security threat because of their behavior. On his arrival, Holsomback was X-rayed and then placed in a cell with the cellmate.

¶3    The cells in the unit were five feet wide and twelve feet long and housed two inmates; each cell had a desk, toilet, and sink, along with a bunk bed and shelf for each inmate. While the location of the unit control room did not allow prison officers to see fully into the cells, each cell was equipped with an intercom system that allowed inmates to communicate with the control room officer by pressing a button.

¶4    At around 7:25 p.m.—when Holsomback had been in the cell for at least five hours—the officer in the control room was alerted to a problem in the cell when either Holsomback or the cellmate pushed the intercom button. The officer could hear "a lot of scuffling and what sounded like . . . wrestling and like a fight," "grunting," and someone saying, "Get the fuck off me." Believing "there was likely a fight going on in the cell," the control room officer radioed other officers to check on the cell's occupants. Around five officers responded to the call.

¶5    Officers looked into the cell and saw blood throughout— on the desk, floor, walls, toilet, and bottom bunk. When officers

entered, they found Holsomback and the cellmate standing on opposite sides of the cell—the cellmate near the desk and Holsomback near the door and closer to the toilet. One officer testified that she did not see any "aggression" between the two of them and that they did not seem to be "wound up." The officer saw that the cellmate "had a big cut or gash in his back and he had a lot of blood on him"—"all over his back" and "some on the front." Holsomback had blood on his hands and face, but it appeared not to be his because he had "no cuts or anything." The officers escorted the cellmate to a separate holding cell for a medical evaluation.

¶6     The prison EMT noted that he "focused" his attention on the cellmate once he saw the "severity of his injuries." He saw "several puncture wounds" on "various parts" of the cellmate's body. The EMT ended up treating three stab wounds on the cellmate's back. He explained that the "narrow, long, and smooth" nature of the injuries led him to conclude they were puncture wounds. He described these injuries as "full-thickness" wounds, meaning the puncture passed "through all of the skin layers"—"through the epidermis, through the dermal tissue," and "down to the fatty tissue."

¶7     A prison investigator arrived about thirty minutes after the incident and interviewed the cellmate. The cellmate did not implicate Holsomback, but the investigator did not think he was being honest. The investigator also met with Holsomback. The investigator noted that he did not see any wounds on Holsomback and that he did not appear to be "bleeding from anywhere."

¶8     The investigator then searched the cell. Knowing that "the toilet is a place where most people try to get rid of a weapon if it's involved," the investigator looked there and saw a "white object" that appeared to be "cloth material in the bottom of the toilet." The investigator asked one of the officers to retrieve the object, which turned out to be a homemade weapon (the shank). The

white cloth had a pink tint, which the investigator thought looked "like diluted blood." The shank was made of metal and was about five inches long and an inch wide with a sharpened edge and a cloth wrapping at the bottom. The shank was not tested for DNA or fingerprints.

*The Proceedings*

¶9 The State charged Holsomback with aggravated assault by a prisoner, *see* Utah Code Ann. § 76-5-103.5 (LexisNexis 2017); possession of a prohibited item in a correctional facility, *see id.* § 76-8-311.3(2); and obstruction of justice, *see id.* § 76-8-306(1). The State also charged Holsomback with two enhancements. It first alleged that Holsomback was a habitual violent offender because "on at least two previous occasions [Holsomback had] been convicted of a violent felony," *see id.* § 76-3-203.5(1)(b), which would enhance a second degree felony conviction to a first degree felony, *see id.* § 76-3-203.5(2)(b). Lastly, the State alleged that Holsomback used a dangerous weapon in the commission of the aggravated assault, which would increase the minimum prison term by one year. *See id.* § 76-3-203.8(2)(a).

¶10 At trial, the State presented testimony from the prison officers, the investigator, and the EMT. The State also introduced into evidence (1) the shank; (2) video showing the common area outside the cell before, during, and after the incident; and (3) photographs of the cellmate's injuries, Holsomback's lack of injury, and the blood on Holsomback.

¶11 At the close of the State's case, Holsomback's attorney (Counsel) moved for a directed verdict, arguing that there was "no indication" that Holsomback attacked the cellmate. Rather, Counsel argued that the cellmate "could have injured himself" or "[i]t could have been self defense." The court denied the motion, "find[ing] that a jury acting reasonably and considering the

evidence in the light most favorable to the State could find each of the elements of each of the charges beyond a reasonable doubt."

¶12   Holsomback did not testify or call any witnesses to testify. However, in closing, Counsel, noting that Holsomback and the cellmate were "calm" and "compliant" when officers entered the cell, asked,

> What happened in that cell? Was this a fight? If this was a fight then where is the antagonism? Where is the anger for each other? What is going on here? Well, [the cellmate] did not accuse Mr. Holsomback of anything. And so we're left with well, something happened. But that doesn't mean that a crime occurred.

She continued,

> Did [the cellmate] self-harm and Mr. Holsomback try and stop him? Did [the cellmate] initiate a fight and Mr. Holsomback try to defend himself? What's going on in here? We don't know.
>
> . . . .
>
> [The cellmate] could have self-harmed. Mr. Holsomback could have defended himself. Those are reasonable inferences that can be made in this case just as equally as Mr. Holsomback could have attacked [the cellmate].

¶13   Jury Instruction No. 30 set forth the aggravated assault by a prisoner charge as follows:

> Kenneth Ray Holsomback is charged in Count 1 of the Information with committing Aggravated Assault by a Prisoner on or about August 10, 2018.

You cannot convict him of this offense unless, based on the evidence, you find beyond a reasonable doubt each of the following elements:

1. Kenneth Ray Holsomback;
2. Intentionally, knowingly, or recklessly;
3. Committed an act with unlawful force or violence that
   a. Caused bodily injury to [the cellmate]; or
   b. Created a substantial risk of bodily injury to [the cellmate]; and
4. Used a dangerous weapon; and
5. At the time of the act, Kenneth Ray Holsomback was confined in a jail or other penal institution.

After you carefully consider all the evidence in this case, if you are convinced that each and every element has been proven beyond a reasonable doubt, then you must find the defendant GUILTY. On the other hand, if you are not convinced that each and every element has been proven beyond a reasonable doubt, then you must find the defendant NOT GUILTY.

¶14  Also relevant here is the wording of the general verdict form:

We, the jurors in the above case find beyond a reasonable doubt the verdict against the defendant

KENNETH RAY HOLSOMBACK, as follows:

Count I:  Aggravated Assault by a Prisoner

____ Guilty   ____ Not Guilty

Count II:     Possession of Items Prohibited in
              Correctional Facilities

              ____ Guilty    ____ Not Guilty

Count III:    Obstruction of Justice

              ____ Guilty    ____ Not Guilty

The jury returned a guilty verdict on each charge.

¶15    The trial was bifurcated to allow the jury to consider enhancements as to whether Holsomback was a habitual violent offender with regard to Count I and Count II and whether he used a dangerous weapon with regard to Count I. For the habitual violent offender enhancement, the State introduced certified copies of minute entries of two of Holsomback's prior felony convictions. For the dangerous weapon enhancement, the State told the jury that it must find Holsomback guilty if it believed that he "used a dangerous weapon, namely an item or object capable of causing serious bodily injury or death while committing the aggravated assault by a prisoner."

¶16    The first special verdict form, which was substantively identical to the other two special verdict forms except regarding the description of the counts and the enhancements, was worded as follows:

> We, the jury, have found the defendant, KENNETH RAY HOLSOMBACK, guilty of Aggravated Assault by a Prisoner, as charged in Count I. We also unanimously find the State:
>
> ☐ Has
>
> ☐ Has Not

proven beyond a reasonable doubt that at the time
he committed the offense of Aggravated Assault by
a Prisoner, was a Habitual Violent Offender.

¶17 The jury found that the State had proved the applicability of the enhancements as applied to the two counts. At sentencing, the State moved to strike the habitual violent offender enhancement on Count II after it realized possession of a prohibited item in a correctional facility was not subject to that enhancement. Accordingly, the possession count was amended from a first degree felony to a second degree felony at the State's request, and the court sentenced Holsomback on each of the three counts, with the enhancements applying only to the aggravated assault charge. Holsomback appeals.

ISSUES AND STANDARDS OF REVIEW

¶18 Holsomback first claims that the State presented insufficient evidence to support his convictions on the three charges. "In assessing a claim of insufficiency of the evidence, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Covington*, 2020 UT App 110, ¶ 27, 472 P.3d 966 (cleaned up). "And we will not reverse a jury verdict if we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Maestas*, 2012 UT 46, ¶ 177, 299 P.3d 892 (cleaned up).

¶19 Holsomback next argues that the district court plainly erred in giving, and Counsel rendered ineffective assistance in approving, Instruction No. 30, the general verdict form, and the special verdict forms. When "a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant

was deprived of the effective assistance of counsel as a matter of law." *State v. Darnstaedt*, 2021 UT App 19, ¶ 19, 483 P.3d 71 (cleaned up). And "the plain error standard of review requires an appellant to show the existence of a harmful error that should have been obvious to the district court." *State v. Naves*, 2020 UT App 156, ¶ 9, 477 P.3d 28 (cleaned up).

## ANALYSIS

### I. Sufficiency of the Evidence

¶20    Holsomback argues that insufficient evidence supported his convictions for aggravated assault by a prisoner, possession of an item prohibited in a correctional facility, and obstruction of justice.

¶21    When reviewing the sufficiency of the evidence, an appellate court gives "substantial deference to the jury." *State v. Ashcraft*, 2015 UT 5, ¶ 18, 349 P.3d 664; *see also State v. Hamilton*, 2003 UT 22, ¶ 38, 70 P.3d 111 ("In reviewing a jury verdict, we accord high deference to the fact-finder at trial."). Thus, in sufficiency claims, this court reviews "the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Maestas*, 2012 UT 46, ¶ 302, 299 P.3d 892 (cleaned up). "After all, the jury, not the appellate court, is the exclusive judge of . . . the weight to be given particular evidence." *State v. Granados*, 2019 UT App 158, ¶ 28, 451 P.3d 289 (cleaned up). "And a jury is not obligated to believe the evidence most favorable to the defendant, nor does the existence of contradictory evidence or of conflicting inferences warrant disturbing the jury's verdict on appeal." *Id.* (cleaned up). "Simply put, that [a] jury weighed the evidence differently than [a defendant] believes it should have is not enough to persuade us that the evidence . . . was insufficient." *State v. Law*, 2020 UT App 74, ¶ 26, 464 P.3d 1192.

¶22   "Thus, we will reverse a jury verdict only when the evidence, viewed in the light most favorable to the jury's verdict, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *State v. Covington*, 2020 UT App 110, ¶ 31, 472 P.3d 966 (cleaned up). Put another way, "we will not reverse a jury verdict if we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *Maestas*, 2012 UT 46, ¶ 177 (cleaned up).

¶23   Moreover, "[d]irect evidence is not required" for a jury to reach a conviction. *See State v. Nielsen*, 2014 UT 10, ¶ 47, 326 P.3d 645. Indeed, "[s]ustainable verdicts are entered every day on the sole basis of circumstantial evidence." *Id.* "The idea that circumstantial evidence is necessarily less convincing and of less value than direct evidence is a misstatement of the law. On the contrary, circumstantial evidence may even be more convincing than direct testimony." *State v. MacNeill*, 2017 UT App 48, ¶ 57, 397 P.3d 626 (cleaned up). And it is "well-established" that "the identification of a defendant as the person who perpetrated the crime charged . . . can be inferred from circumstantial evidence." *State v. Isom*, 2015 UT App 160, ¶ 23 n.2, 354 P.3d 791. Accordingly, "a witness need not physically point out a defendant so long as the evidence is sufficient to permit the inference that the person on trial was the person who committed the crime." *Id.* (cleaned up).

¶24   With these standards in mind, we conclude that there was sufficient evidence for the jury to find Holsomback guilty of the three charges. In other words, there was "some evidence . . . from which a reasonable jury could find . . . beyond a reasonable doubt" that Holsomback was the person who acquired the shank, stabbed the cellmate with it, and then tried to conceal it in the toilet. *See Maestas*, 2012 UT 46, ¶ 177 (cleaned up).

¶25 Concerning the aggravated assault charge, there is no doubt that a fight occurred in the cell. The control room officer heard over the intercom either Holsomback or the cellmate telling the other to get off him. In addition, there was blood all over the cell and its two occupants.

¶26 But evidence showed more than the mere occurrence of a fight. The evidence also pointed to the perpetrator. Most telling is that the cellmate was stabbed several times. These were not surface wounds; rather, they were "full-thickness" puncture wounds that penetrated through the epidermis, the dermis, and into the fatty tissue of the cellmate's skin. And Holsomback had no injuries after the fight. He had blood on his face, chest, hands, forearms, and around his fingernails. But that blood was not likely from Holsomback because he was not bleeding from any wound; instead, it was likely from the cellmate. Thus, from the evidence presented, the jury could reasonably conclude that the two occupants of the cell engaged in an altercation from which Holsomback emerged unscathed and the cellmate received three serious puncture wounds. From this evidence, it is perfectly reasonable for the jury to have found beyond a reasonable doubt that Holsomback was the perpetrator of the assault on the cellmate.

¶27 Holsomback resists this conclusion by pointing out that the cellmate did not identify him as the attacker and suggesting that it was just as plausible that he may have been acting in self-defense or trying to prevent the cellmate from self-harm. Moreover, Holsomback argues that there was "no direct evidence" that he injured the cellmate "and the circumstantial evidence would only allow the jury to speculate that he did."

¶28 But the jury was reasonably skeptical of these defenses. After hearing the evidence, the jury apparently determined that it was implausible that Holsomback acted in self-defense when he had no injuries while the cellmate had three deep puncture

wounds in his back. As to Holsomback's suggestion that the cellmate stabbed himself, the jury likely found it difficult to see how it would be possible for the cellmate to self-inflict such serious wounds in his own back—especially using a crudely fashioned shank. Indeed, it was much more likely that the wounds were inflicted by another person physically situated to deliver a stab of sufficient force to deeply puncture multiple layers of skin and flesh in the back. And given that Holsomback was the only other person in the cell, the jury's determination that he was the one to do so is certainly supported by "some evidence." *See id.* (cleaned up). The fact that Holsomback can identify possible "alternative inference[s]" based on the evidence "is not nearly enough to set [the] verdict aside." *See Ashcraft*, 2015 UT 5, ¶ 25. And "[t]he inference to be drawn from the evidence was the jury's to make (within reason), and the inference it apparently drew was reasonable—more so, in fact, than the notion that" Holsomback was acting in self-defense or trying to prevent the cellmate from harming himself. *See id.* "[T]hat the jury weighed the evidence differently than [Holsomback] believes it should have is not enough to persuade us that the evidence . . . was insufficient." *See Law*, 2020 UT App 74, ¶ 26.

¶29 With regard to the possession charge, Holsomback argues that "the likelihood that he brought the weapon into the cell is very low" because he entered the unit the same day and in so doing faced substantial security measures. Rather, he argues that the "only reasonable inference would be that [the cellmate] already had the weapon in the cell when Holsomback arrived." To support a conviction, then, Holsomback argues that "the jury would . . . need to infer that Holsomback obtained possession of the weapon after entering the cell and before officers arrived."

¶30 But Holsomback's contention contains one key flaw: once the jury found that Holsomback assaulted the cellmate, it necessarily had to find that he possessed a prohibited item. *See* Utah Code Ann. § 76-8-311.3(2) (LexisNexis 2017) (listing a

"dangerous weapon" as a prohibited item in a correctional facility). After all, Holsomback had to use something to cause the puncture wounds, and the likely instrument—the shank—was found in the cell. Moreover, it does not matter how Holsomback obtained the shank because possession requires only "dominion or control" of an item. *See id.* § 76-1-601(10) ("'Possess' means to have physical possession of or to exercise dominion or control over tangible property."). Thus, it is clear that if the jury believed Holsomback assaulted the cellmate by stabbing him in the back, it was also reasonable for it to find beyond a reasonable doubt that Holsomback had possession of the only contraband item found in the cell capable of inflicting those injuries, regardless of how that item came to be in the cell.

¶31 The same reasoning applies to the obstruction charge. The statutory definition of obstruction requires only that an "actor, with intent to hinder, delay, or prevent the investigation, . . . conceals . . . any item or other thing." *Id.* § 76-8-306(1)(c). The jury concluded that Holsomback had stabbed the cellmate in the back. It heard that the shank likely used in the assault was found in the toilet, which Holsomback could easily access in the small cell. There was, therefore, "some evidence" from which the jury could find beyond a reasonable doubt that Holsomback obstructed justice by attempting to hide the shank in the toilet. *See Maestas*, 2012 UT 46, ¶ 177 (cleaned up).

¶32 In sum, Holsomback has failed to show that evidence supporting his convictions was insufficient. The State produced ample evidence that Holsomback assaulted the cellmate with a shank that he possessed and then attempted to conceal.

## II. Jury Instruction No. 30

¶33 Instruction No. 30 stated that the jury could not convict Holsomback unless it found beyond a reasonable doubt that Holsomback "intentionally, knowingly, or recklessly . . .

committed an act with unlawful force or violence that caused bodily injury" to the cellmate or "created a substantial risk of bodily injury" to the cellmate. (Cleaned up.)

¶34 Holsomback claims that Counsel was ineffective for approving Instruction No. 30 because the aggravated-assault-by-a-prisoner statute uses the term "serious bodily injury," and, consequently, Instruction No. 30 should have also been formulated to use the term "serious bodily injury." Relatedly, Holsomback argues that the district court plainly erred in not giving an instruction that defined "bodily injury" and "serious bodily injury." *See* Utah Code Ann. § 76-5-103.5 (LexisNexis 2017) ("Any prisoner who commits aggravated assault . . . is guilty of: (1) a second degree felony if no serious bodily injury was intentionally caused; or (2) a first degree felony if serious bodily injury was intentionally caused."); *see also id.* § 76-5-103(1) ("Aggravated assault is an actor's conduct . . . that is . . . an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another; and . . . that includes the use of . . . a dangerous weapon."); *id.* § 76-1-601(3), (11) (defining "[b]odily injury" as "physical pain, illness, or any impairment of physical condition" and "[s]erious bodily injury" as a "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death").

¶35 Regarding Holsomback's argument that Counsel was ineffective for approving Instruction No. 30 when the instruction did not include the term "serious bodily injury," this argument is a non sequitur. The question of whether a prisoner caused serious bodily injury is relevant when the State charges assault by a prisoner as a first degree felony. But here, the State charged assault by a prisoner resulting in mere "bodily injury," which is a second degree felony under the statute. *See id.* § 76-5-103.5(1) (stating that aggravated assault by a prisoner is "a second degree

felony if no serious bodily injury was intentionally caused"). The conviction was enhanced to a first degree felony only when the jury found that Holsomback was a habitual violent offender. The inclusion of "serious bodily injury" would have been out of place in Instruction No. 30 because the jury was not tasked with determining whether Holsomback intentionally caused serious bodily injury to the cellmate. The jury had to find that Holsomback caused mere bodily injury to the cellmate, and thus Instruction No. 30 accurately conveyed to the jury the charge against Holsomback. *See State v. Holm*, 2020 UT App 96, ¶ 31, 467 P.3d 934 ("Although defendants are entitled to an accurate instruction upon the basic elements of an offense, . . . district courts need not give jury instructions regarding elements unnecessary for the conviction of the charged crime." (cleaned up)); *accord State v. Pederson*, 2005 UT App 98, ¶ 4, 110 P.3d 164.

¶36    Given what we have just explained—that Instruction No. 30 was correct—Counsel's approval of the instruction was not objectively unreasonable. *See State v. Vigil*, 2019 UT App 131, ¶ 11, 448 P.3d 738 ("Failure to object to jury instructions that correctly state the law is not deficient performance." (cleaned up)); *see also State v. Lopez*, 2019 UT App 11, ¶ 23, 438 P.3d 950 ("To establish ineffective assistance of counsel, [a] defendant must show: (1) that counsel's performance was objectively deficient, and (2) a reasonable probability exists that but for the deficient conduct [the] defendant would have obtained a more favorable outcome at trial. . . . A defendant's inability to establish either element defeats a claim for ineffective assistance of counsel." (cleaned up)). And the same reasoning applies to Holsomback's claim that the court plainly erred in not giving an instruction that defined "serious bodily injury." Because the jury was not tasked with determining whether Holsomback intentionally caused serious bodily injury to the cellmate, there can be no error—much less plain error—in the omission of a definition for that term. *See State v. Tucker*, 2004 UT App 217, ¶ 19, 96 P.3d 368 (rejecting a claim

that giving a jury instruction constituted plain error when the defendant was unable to identify "any error in the challenged instruction, much less the obvious error required under a plain error analysis").

¶37 Lastly, Holsomback's complaint that the court plainly erred in not defining "bodily injury" fails because any error in this respect was invited when Counsel approved Instruction No. 30. While it is true that Counsel originally had proposed jury instructions that defined "bodily injury," the State, Counsel, and the court later worked together to compile instructions that did not include the definition. When asked if Holsomback objected to the instructions, Counsel responded, "No. Not really. I think they're mostly MUJIs." Specifically, with respect to Instruction No. 30, the court asked, "Is everybody okay with that the way it is?" Counsel responded, "I'm fine with that." And after resolving a few concerns unrelated to the bodily injury definition, the court asked the parties whether there was "[a]nything else" to discuss regarding the instructions. Counsel did not renew the request for a bodily injury definition, instead responding, "I think that's it." Thus, Counsel affirmatively approved the instruction in responding to the court's questions. And this affirmative response invited the alleged error contained in the instructions. *See State v. Geukgeuzian*, 2004 UT 16, ¶ 9, 86 P.3d 742 ("A jury instruction may not be assigned as error . . . if counsel, either by statement or act, affirmatively represented to the court that he or she had no objection to the jury instruction." (cleaned up)); *see also Wilson v. Sanders*, 2019 UT App 126, ¶ 24 n.3, 447 P.3d 1240 ("An affirmative representation that a party has no further objection to a jury instruction falls within the ambit of the invited-error doctrine." (cleaned up)). As such, "because [Counsel] made an affirmative representation encouraging the court to proceed without further consideration of an issue, [Holsomback] invited" the "error in the jury instructions" he now complains of, "and therefore the plain error exception is inapplicable here and we need not consider

[Holsomback's] objection to that action on appeal." *See State v. Popp*, 2019 UT App 173, ¶ 24, 453 P.3d 657 (cleaned up).[1]

### III. Verdict Forms

¶38   Holsomback's final complaint is that Counsel rendered ineffective assistance by not objecting to, and the district court plainly erred in giving, the general and special verdict forms.

¶39   "To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense." *State v. Wright*, 2021 UT App 7, ¶ 52, 481 P.3d 479 (cleaned up). "However, there is no reason for a court deciding an ineffective assistance claim to address both components of the inquiry if the defendant makes an insufficient showing on one." *State v. Collier*, 2020 UT App 165, ¶ 12, 479 P.3d 351 (cleaned up).

---

1. Holsomback also skeletally asserts ineffective assistance for Counsel's failure to request a definition of bodily injury: "The failure to provide the necessary definitions for 'bodily injury,' and 'serious bodily injury,' was that of the court *and counsel*." (Emphasis added.) "To the extent that [Holsomback] has even raised this as an issue for our review, it is inadequately briefed and we decline to reach it." *See State v. Boyer*, 2020 UT App 23, ¶ 40 n.7, 460 P.3d 569; *see also State v. Green*, 2005 UT 9, ¶ 11, 108 P.3d 710 (explaining that a brief that provides "no meaningful legal analysis" apart from "one or two sentences" broadly stating an argument and entitlement to relief is inadequate (cleaned up)); Utah R. App. P. 24(a)(8) (stating that appellate briefs "must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal").

¶40    To show that Counsel performed deficiently, Holsomback must overcome the presumption that Counsel's challenged actions and decisions fell "within the wide range of reasonable professional assistance." *See Strickland v. Washington*, 466 U.S. 668, 689 (1984). "[T]he ultimate question is always whether, considering all the circumstances, counsel's acts or omissions were objectively unreasonable." *State v. Scott*, 2020 UT 13, ¶ 36, 462 P.3d 350. And "counsel's performance is prejudicial if the defendant can demonstrate that there is a reasonable probability that the outcome of his or her case would have been different absent counsel's error. Accordingly, the defendant must do more than simply show that the errors had some conceivable effect on the outcome of the proceeding." *Wright*, 2021 UT App 7, ¶ 54 (cleaned up).

A.    General Verdict Form

¶41    Holsomback argues that the general verdict form, *supra* ¶ 14, was defective because the prefatory language applied to the guilty and not guilty options for each count. In other words, the general verdict form could be read as asking whether the jury found Holsomback guilty beyond a reasonable doubt or not guilty beyond a reasonable doubt with respect to each count. Holsomback asserts,

> [T]he fact is there were only two alternatives, both of which required the same degree of proof. Given the facts, there is virtually no likelihood that Mr. Holsomback was going to be found not guilty by proof beyond a reasonable doubt. The jury was required to turn to the only alternative remaining, a guilty verdict. That is not how it is supposed to work.

¶42    Holsomback makes a valid point, and the State admits that the general verdict form featured "unartfully drafted

introductory language." Indeed, a jury is never charged with finding a defendant "not guilty" beyond a reasonable doubt. We note that the general verdict form here does not accurately reflect the burden of proof, and trial courts, prosecutors, and the defense bar should not use such prefatory language in verdict forms.

¶43 But while acknowledging that the general verdict form contained inaccurate language, we are not persuaded that Holsomback was prejudiced by the inaccuracy. We reach this conclusion because the jury instructions repeatedly made clear that the State had the burden of proving guilt beyond a reasonable doubt on each of the three counts and that Holsomback had no burden to prove his innocence:

- Instruction No. 3: "The prosecution has the burden of proving the defendant guilty beyond a reasonable doubt."

- Instruction No. 4: "Remember, the fact that the defendant is charged with a crime is not evidence of guilt. The law presumes that the defendant is not guilty of the crimes charged. This presumption persists unless the prosecution's evidence convinces you beyond a reasonable doubt that the defendant is guilty."

- Instruction No. 30: "You cannot convict [Holsomback] of this offense unless, based on the evidence, you find beyond a reasonable doubt each of the [elements for aggravated assault by a prisoner]."

    . . . .

    "After you carefully consider all the evidence in this case, if you are convinced that each and every element has been proven beyond a reasonable

doubt, then you must find the defendant GUILTY. On the other hand, if you are not convinced that each and every element has been proven beyond a reasonable doubt, then you must find the defendant NOT GUILTY."

- Instruction No. 32 repeated the language of Instruction No. 30, with the exception of changing it to apply to possession of a prohibited item in a correctional facility.

- Instruction No. 40 repeated the language of Instruction No. 30, with the exception of changing it to apply to obstruction of justice.

- Instruction No. 43: "Because this is a criminal case, every single juror must agree with the verdict before the defendant can be found 'guilty' or 'not guilty.' . . . [T]he verdict must reflect your individual, careful, and conscientious judgment as to whether the evidence presented by the prosecutor proved each charge beyond a reasonable doubt."

¶44    Moreover, the foreperson was instructed to fill out the general verdict form—where the inaccurate language occurs—only "[o]nce the jury [had] reached the verdict." Given this sequence, any risk of prejudice was substantially reduced because the jury had reached its determination of guilt using the correct burden-of-proof language contained in the jury instructions just cited, isolated from the influence of the general verdict form.

¶45    Under these circumstances, there is no "reasonable probability that the outcome" of Holsomback's case would have been different absent the error Counsel allowed to occur in not objecting to the inaccurate language of the general verdict form. *See Scott*, 2020 UT 13, ¶ 43. Given that the jury (1) had been told that the law presumed Holsomback not guilty, (2) had been

instructed at least nine times that the State bore the burden of proving Holsomback guilty beyond a reasonable doubt, and (3) had been instructed not to complete the general verdict form until after it had reached its verdict, the impact of the inaccurate verbiage Holsomback complains of was "not so profound as to undermine our confidence in the proceeding's outcome." *Cf. State v. Ayala*, 2022 UT App 1, ¶ 24, 504 P.3d 755 (cleaned up).

¶46 And Holsomback's claim of plain error also fails for lack of prejudice. In other words, Holsomback cannot succeed on a claim of plain error or ineffective assistance regarding the verbiage employed in the general verdict form if he cannot establish prejudice. *See State v. McNeil*, 2016 UT 3, ¶ 29, 365 P.3d 699 ("We have held that the prejudice test is the same whether under the claim of ineffective assistance or plain error."); *see also State v. Henfling*, 2020 UT App 129, ¶ 30 n.7, 474 P.3d 994 ("When a defendant raises issues of plain error and ineffective assistance of counsel, a common standard of prejudice applies because plain error requires a showing that absent the error, there is a substantial likelihood of a more favorable outcome for defendant, and similarly, the ineffective assistance standard requires a showing that but for ineffective assistance of counsel, the result would likely have been different for [the] defendant." (cleaned up)).

¶47 In sum, we conclude that Holsomback's ineffective assistance claim and plain error claim with regard to the general verdict form fail because he was not prejudiced by the inaccurate language.

B. Special Verdict Forms

¶48 With regard to the three special verdict forms, *supra* ¶ 16, Holsomback argues that they "all suffer from the same infirmity" as did the general verdict form. We disagree.

¶49    Unlike the general verdict form, which asked the jury to state whether Holsomback was guilty or not guilty beyond a reasonable doubt, the special verdict forms accurately described the jury's duty: to unanimously find whether or not the State proved beyond a reasonable doubt that the enhancing condition existed. *See United States v. Haymond*, 139 S. Ct. 2369, 2376 (2019) (plurality opinion) ("A jury must find beyond a reasonable doubt every fact which the law makes essential to a punishment that a judge might later seek to impose." (cleaned up)); *see also Pereida v. Wilkinson*, 141 S. Ct. 754, 765 (2021) (pointing out "the Sixth Amendment rule in criminal cases that any fact that increases the penalty for a crime must be proved to a jury" (cleaned up)). In other words, the special verdict forms contained only one possibility (i.e., the elements necessary to support the enhancement) subject to proof beyond a reasonable doubt, while the general verdict form had two possibilities (namely, guilty or not guilty) to which proof beyond a reasonable doubt might apply. It is this dualism—something altogether absent in the special verdict forms—that created the problem in the general verdict form.

¶50    Therefore, finding no error in the language of the special verdict form, we conclude that Counsel did not perform deficiently in approving the forms, and the court did not plainly err in submitting them to the jury. *See State v. Vigil*, 2019 UT App 131, ¶ 11, 448 P.3d 738 ("Failure to object to jury instructions that correctly state the law is not deficient performance." (cleaned up)); *see also State v. Kelson*, 2014 UT 50, ¶ 26, 345 P.3d 1136 (stating that "there can be no error—much less plain error" in a jury instruction that correctly expresses the law and to which the parties stipulated).

CONCLUSION

¶51     We conclude that there was sufficient evidence to support each of the three charged offenses leading to the convictions.

¶52     We also conclude that because the jury was not tasked with determining whether Holsomback intentionally caused serious bodily injury to the cellmate, Instruction No. 30 cannot support a claim of ineffective assistance or plain error in its omission of a definition for that term. And Holsomback's plain error complaint about Instruction No. 30 fails as invited error.

¶53     Although the language of the general verdict form inaccurately suggested that the reasonable doubt standard applied to a finding of not guilty, Holsomback's ineffective assistance claim fails for lack of prejudice. And Holsomback's plain error challenge in this regard fails for the same reason.

¶54     Finally, having found no defect in the special verdict forms, Holsomback's claims concerning them also fail.

¶55     Affirmed.

_____