**2019 UT App 202**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
NATHAN DAVID BAIZE,
Appellant.

Opinion
No. 20180326-CA
Filed December 12, 2019

Fourth District Court, American Fork Department
The Honorable Roger W. Griffin
No. 161100835

Douglas J. Thompson, Attorney for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Nathan David Baize appeals his convictions for violating a protective order. We affirm.

### BACKGROUND[1]

¶2     Baize and his former wife (Victim) were married in 2010 and divorced in 2014. Victim had sole physical custody of their

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

child and shared joint legal custody with Baize. After enduring several instances of verbal and physical abuse, Victim sought a protective order against Baize. The court issued a protective order after a hearing, at which Baize was present, directing Baize not to "commit, try to commit or threaten to commit any form of violence" against Victim, including "stalking, harassing, threatening, physically hurting, or causing any other form of abuse." Baize was also ordered, "Do not contact, phone, mail, e-mail, or communicate in any way with [Victim], either directly or indirectly," with the exception that Baize could email Victim about their child, provided his communications were "civil in nature."

¶3     After the entry of the protective order, Baize sent numerous emails to Victim that were not about their child, not civil in nature, and arguably abusive. Much of the content of the emails was directed toward Victim's qualities and character. Baize sent emails to Victim telling her that she was a "spoiled brat," "lazy," "irresponsible," "vindictive," "selfish," "uncooperative," "incapable," "fake," and lacking "integrity." Baize also sent emails to Victim telling her to "[u]se your brain blondie," to "[k]eep it simple stupid, [Victim's name]," and that he was "sick and tired . . . of [Victim's] blonde, lazy, messed up approach to cooperation." Additionally, on several occasions, Baize threatened to call the police for "custodial interference charges."

¶4     On another occasion, Baize emailed Victim—with a copy also sent to Victim's new husband—complaining about Victim and alleging that Victim engaged in certain improprieties during their marriage. Victim's husband spoke to Baize at length and told him that he "need[ed] to stop the belligerent, degrading emails to [Victim]." Baize responded that his emails "will never stop." Furthermore, Baize told Victim that she was "a weak, weak person" because she would "construe [his email comments] as personal attacks."

¶5    The content of Baize's emails to Victim prompted the State to charge him with four counts of violating a protective order. *See* Utah Code Ann. § 76-5-108 (LexisNexis Supp. 2018). These charges were enhanced from misdemeanors to third degree felonies because Baize already had a prior conviction for violating the same protective order. *See id.* § 77-36-1.1(2)(c) (Supp. 2019) (describing enhanced penalties for violating a protective order). Baize moved to dismiss the charges, arguing that the protective order was an unconstitutional prior restraint of speech and that requiring his emails to be "civil in nature" was unconstitutionally vague. Baize also asked the court to give the jury an instruction defining the terms "harassing," "threatening," and "abuse" in the protective order as "forms of violence or threats of violence." The court denied both motions.

¶6    At trial, Baize stated that while the tone in his emails might indicate that he was "[f]rustrated," "feeling dejected," "[h]elpless, hopeless, [and] concerned," the emails were never uncivil. Rather, Baize asserted that he was just being "honest" and "clear." However, Baize also testified that he suspected Victim would be offended by the emails and that Victim was "weak" for reading his emails as insults. Baize also admitted that his emails were similar in tone and content to emails he had sent previously to Victim, which formed the basis of his prior conviction for violating the same protective order. The jury found Baize guilty of three counts of violating a protective order. Baize appeals.

ISSUES AND STANDARDS OF REVIEW

¶7    The first issue on appeal is whether the restriction in the protective order requiring that Baize's communication with Victim be "civil in nature" rendered the order unconstitutionally vague or acted as a prior restraint on speech. "Whether [an order] is constitutional is a question of law that we review for correctness, giving no deference to the trial court." *State v. MacGuire*, 2004 UT 4, ¶ 8, 84 P.3d 1171 (quotation simplified).

¶8 Baize's second challenge on appeal is that the trial court erred in denying his request to instruct the jury on the "legal definitions" of terms in the protective order. This issue presents a question of law, and both parties agree that we review the trial court's decision on this point for correctness. *See State v. Dozah*, 2016 UT App 13, ¶ 12, 368 P.3d 863 ("We review a district court's refusal to give a requested jury instruction for correctness.").

ANALYSIS

I. Constitutional Challenges to the Protective Order

¶9 At the outset, we must determine whether Baize is permitted, "in this criminal proceeding, [to] collaterally attack the protective order entered in the prior civil proceeding." *See State v. Hegbloom*, 2014 UT App 213, ¶ 10, 362 P.3d 921. The State contends that as "a threshold matter, this Court should not address either constitutional claim because the collateral bar rule precludes Baize from challenging the validity of the protective order in a prosecution for violating that order."

¶10 A collateral attack is "where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or revised or modified or by a proceeding in equity to prevent its enforcement." *Olsen v. Board of Educ. of Granite School Dist.*, 571 P.2d 1336, 1338 (Utah 1977) (quotation simplified). "Under the collateral bar doctrine, a party may not challenge a district court's order by violating it. Instead, [the party] must move to vacate or modify the order, or seek relief in an appellate court." *Iota LLC v. Davco Mgmt. Co.*, 2016 UT App 231, ¶ 13, 391 P.3d 239 (quotation simplified). "With rare exception, when a court with proper jurisdiction enters a final judgment, . . . that judgment can only be attacked on direct appeal." *State v. Hamilton*, 2003 UT 22, ¶ 25, 70 P.3d 111.

¶11 The proper forum for a defendant to challenge a protective order's terms is in the original action, not in a

subsequent criminal case resulting from its violation. This court has already addressed this issue in *Hegbloom*, where we stated that a civil protective order is not subject to collateral attack and that there is "nothing fundamentally unfair in not allowing a litigant to challenge collaterally a judgment he could have challenged directly had he chosen to do so." 2014 UT App 213, ¶¶ 15, 22; *see also Olsen*, 571 P.2d at 1338 (explaining that when an issue is erroneously decided, the proper remedy is to directly, rather than collaterally, attack it); *Iota*, 2016 UT App 231, ¶ 18 ("The proper method for contesting an adverse ruling is to appeal it, not to violate it." (quotation simplified)). Courts in other jurisdictions are in accord.[2]

¶12    Thus, our precedent and that of other jurisdictions make clear that the collateral bar rule applies to situations in which a defendant seeks to attack the validity of a protective order in a criminal proceeding for addressing a

---

2. Other jurisdictions also explicitly bar collateral attack in this context. *See, e.g.*, *State v. Grindling*, 31 P.3d 915, 918–19 (Haw. 2001) (stating that a domestic restraining order is not subject to collateral attack in the criminal proceeding for its violation and collecting cases stating the same); *Wood v. Commonwealth*, 178 S.W.3d 500, 513 (Ky. 2005) (stating that a party "may not launch a collateral attack on the validity of an emergency protective order in a subsequent prosecution for violation of that order"); *Truesdell v. State*, 304 P.3d 396, 399 (Nev. 2013) ("[A] party may not collaterally attack the validity of a [protective order] in a subsequent criminal proceeding based on violation of the [protective order]."); *Best v. Marino*, 2017-NMCA-073, ¶ 18, 404 P.3d 450 ("The collateral bar rule precludes a restrained party from challenging the merits of [a protective order] after a finding of contempt."); *City of Seattle v. May*, 256 P.3d 1161, 1165 (Wash. 2011) (en banc) ("The collateral bar rule precludes challenges to the validity . . . of a court order in a proceeding for violation of such an order except for challenges to the issuing court's jurisdiction to issue the type of order in question.").

violation of that same protective order. *See State v. Winter*, 979 A.2d 608, 615 (Conn. App. Ct. 2009) ("The collateral bar rule has been extended to apply to situations in which . . . the defendant seeks to attack the validity of a court order in a criminal proceeding, and the rule is justified on the ground that it advances important societal interests in an orderly system of government, respect for the judicial process and the rule of law, and the preservation of civil order." (quotation simplified)).

¶13　Here, Baize was ordered not to "commit, try to commit or threaten to commit any form of violence" against Victim, including "stalking, harassing, threatening, physically hurting, or causing any other form of abuse." The relevant portion of the protective order also provided the following prohibition: "Do not contact, phone, mail, e-mail or communicate in any way with [Victim], either directly or indirectly," the only exception being that Baize could contact Victim "via email about Child," provided the emails were "civil in nature." Not only did Baize sign the protective order as a whole, but he initialed each provision of the order, including those he now challenges on constitutional grounds. Thus, at the outset and even before he signed it, Baize had the opportunity to seek clarification of any provision in the order that he believed was too restrictive or vague. And after the protective order was entered by the court, Baize still could have challenged the order on direct appeal. But he never did so. Instead, Baize raised his prior restraint and vagueness challenges to the protective order only after he was criminally charged a second time with violating the order.

¶14　Precedent—both that of Utah and other jurisdictions— states that a defendant cannot attack the validity of a protective order in a prosecution for violating the order. And that is exactly what Baize attempts to do here. Thus, we conclude that Baize cannot collaterally attack a protective order arising from a civil proceeding in this criminal proceeding. Put simply, this is not

the proper forum to address constitutional challenges to the protective order's terms.[3]

## II. Legal Definitions in the Protective Order

¶15 The protective order prohibited Baize from "stalking, harassing, threatening, physically hurting, or causing any other form of abuse" to Victim. Baize argues that the trial court erred when it denied his request to define for the jury certain "legal terms" contained in the protective order.

¶16 Jury instructions require no specific form as long as they accurately convey the law. "To determine if jury instructions correctly state the law, we look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." *State v.*

---

3. Even if we were to conclude that Baize could attack the validity of the civil protective order here and agree with him that the "civil in nature" language in the protective order is unconstitutionally vague, Baize ignores the alternative restriction imposed on him by the protective order, namely that his communication with Victim must pertain to their child. Baize's emails to Victim appear to have violated this provision.

Baize's communications variously described Victim in unflattering terms and accused her of indiscretions. Indeed, our review of the record reveals that Baize's emails to Victim are replete with examples of Baize directing his comments to Victim's alleged attributes rather than a discussion of co-parenting needs or the needs of the child.

We find the argument that Baize's comments took place in the context of communication about their child unpersuasive. Baize's concerns regarding their child's well-being or Victim's parenting could have been effectively communicated without personal commentary about Victim. In fact, Baize admitted at trial that he was "[g]ambling on" Victim construing the comments he made in his emails as "personal attacks."

*Painter*, 2014 UT App 272, ¶ 6, 339 P.3d 107 (quotation simplified); *see also State v. Hobbs*, 2003 UT App 27, ¶ 31, 64 P.3d 1218 (stating that jury instructions will be upheld when they "fairly tender the case to the jury even where one or more of the instructions, standing alone, are not as full or accurate as they might have been" (quotation simplified)).

¶17 Baize was charged with violating a protective order. *See* Utah Code Ann. § 76-5-108 (LexisNexis Supp. 2018) (stating that any person who is "subject to a protective order" and "who intentionally or knowingly violates that order after having been properly served" is guilty of a misdemeanor or felony, depending on the circumstances). The court instructed the jury that to find Baize guilty of violating the protective order, it would need to find beyond a reasonable doubt the following elements:

1. Nathan David Baize;
2. While subject to a protective order issued by a Utah Court;
3. After having been properly served with the protective order;
4. Intentionally or knowingly violated the protective order; and
5. Is or was a cohabitant of the alleged victim.

¶18 Baize contends that the court erred when it denied his motion requesting a jury instruction that defined the terms "stalking, harassing, threatening, physically hurting, or causing any other form of abuse" as forms of violence or the threat of violence. Baize argues that "because the protective order only prohibits stalking, harassing, threats, and abuse insofar as these terms could mean violence or a threat of violence," the definitions of those terms should be "limited . . . to that realm." (Quotation simplified.) Specifically, Baize requested that the court instruct the jury on the definitions of harassment and physical harm as those terms are defined in Utah's criminal code or in the Cohabitant Abuse Procedures Act. *See* Utah Code Ann.

§ 76-5-106(1) (LexisNexis 2017) (defining harassment as intentionally frightening or harassing another by communicating "a written or recorded threat to commit any violent felony"); *id.* § 77-36-1(4) (Supp. 2019) (defining domestic violence as "any criminal offense involving violence or physical harm or threat of violence or physical harm").[4]

¶19 The violence-based definitional language Baize requested is not found in the protective order or in the statute he was accused of violating. But Baize asserts that because Utah Code section 76-5-108 does not define the terms in the protective order (namely, harassing and threatening), the court should have given the jury the statutory meanings of those terms pulled from other provisions of the criminal code instead of allowing the jury to rely on the general understanding of the terms. Baize's argument misses the mark. He was not charged with harassing or any other violent behavior pursuant to a separate statute. Rather, he was charged pursuant to Utah Code section 76-5-108 with four counts of violating the protective order, and the jury instructions on those four counts closely tracked the language of that section. Moreover, Baize presents no evidence that the

---

4. Baize also argues on appeal that the jury should have been instructed on the definition of stalking. But at trial, the State stipulated that the court would consider instructing the jury on the definition of stalking only "[i]f the State [brought] in evidence of stalking." The State did not attempt to introduce evidence of stalking, and Baize did not again request that the trial court instruct the jury on the issue of stalking. Consequently, Baize waived this aspect of his argument below and cannot raise it on appeal. *See State v. Johnson*, 2017 UT 76, ¶ 16 n.4, 416 P.3d 443 ("Waiver, in the context of raising an issue before a court, is generally the relinquishment or abandonment of an issue before a trial *or* appellate court. . . . If an issue has been waived in the trial court, that issue is not preserved for appeal.").

protective order adopted the specific violence-based statutory definitions he proposed.

¶20    We conclude that the trial court did not err when it denied Baize's request that the jury be instructed using Baize's restrictive definitions of certain terms and allowed the jury to determine whether Baize violated the protective order based on common definitions of the terms contained in the protective order.[5]

---

5. We resolve this aspect of Baize's appeal by declining to apply strict statutory definitions, but we note that the language of the relevant provisions of the protective order was written broadly and did not suggest that Baize was prohibited from engaging in only physically violent behavior or in making threats of violence. Baize's violence-based reading of the protective order's terms conflicts with the public policy underlying the entire domestic violence statutory scheme:

> Because of the serious, unique, and highly traumatic nature of domestic violence crimes, the high recidivism rate of violent offenders, and the demonstrated increased risk of continued acts of violence subsequent to the release of a perpetrator who is convicted of domestic violence, it is the finding of the Legislature that domestic violence crimes warrant the issuance of continuous protective orders . . . because of the need to provide ongoing protection for the victim . . . . [T]he court shall issue a continuous protective order at the time of the conviction or sentencing limiting the contact between the perpetrator and the victim unless the court determines by clear and convincing evidence that the victim does not . . . have a reasonable fear of future harm or abuse.

(continued…)

CONCLUSION

¶21     We hold that the proper forum for Baize to challenge the protective order was the original civil proceeding pursuant to which the order was entered. Because Baize had notice and the opportunity to appeal the protective order, he is barred from collaterally challenging it in the subsequent criminal proceeding resulting from its violation. We also conclude that the trial court did not err in denying Baize's request to define for the jury certain terms contained in the protective order. Accordingly, the judgment of the trial court is affirmed.

───────────

(…continued)

Utah Code Ann. § 77-36-5.1(6)(a)–(b) (LexisNexis Supp. 2019); *see also State v. Hardy*, 2002 UT App 244, ¶ 17, 54 P.3d 645 ("The state has an inarguably significant interest in protecting the health and well-being of its citizens. In furtherance of this goal, the state has created a mechanism whereby the victims of domestic violence may obtain civil orders of protection against their abusers. As part of this protection, the court may prohibit the abuser from having any contact, direct or indirect, with the victim or the victim's family."). Thus, the statute's purpose is to protect domestic abuse victims from further abusive behavior in the broad sense, including psychological abuse and other forms of controlling behavior. Baize's violence-based interpretation of the protective order's terms appears to run contrary to the significant interest the State has in protecting the overall health and emotional well-being of its citizens.