**2024 UT App 92**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TED LEONARD SALSMAN,
Appellant.

Opinion
No. 20230327-CA
Filed July 5, 2024

Sixth District Court, Kanab Department
The Honorable Mandy Larsen
No. 221600005

Debra M. Nelson, Dylan T. Carlson, Benjamin Miller,
and Wendy M. Brown,
Attorneys for Appellant

Sean D. Reyes and Connor Nelson,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1     A jury convicted Ted Leonard Salsman of various charges related to drug distribution, drug possession, and possession of a dangerous weapon by a restricted person. On appeal, he argues the district court abused its discretion in denying his continuance motion to secure testimony from a witness who was incarcerated out of state and that his counsel provided ineffective assistance in failing to object to the jury instruction on the definition of a dangerous weapon. We reject Salsman's arguments and affirm his convictions.

BACKGROUND

¶2     Salsman lived in a trailer and allowed several other people—including his pregnant girlfriend (Girlfriend) and his friend (Friend)—to stay with him on his property. While executing a search warrant, police found Salsman, Girlfriend, and Friend inside the trailer, where a "chunk of meth," a handgun, and a safe with $14,000 in cash lay on the bed. Police found digital scales and a bowl and cutting board dusted with a white "crystal-like substance." In total, they seized approximately 315 grams of methamphetamine. And police found a variety of sizes of cellophane baggies—some unused and others with a "crystal-like substance" inside, which later tested positive for methamphetamine. They also discovered several "steak-type knives" and a hatchet sticking in the wall of the trailer—which Salsman used as a "throwing gallery"—and a twelve-inch serrated hunting knife in a sheath.

¶3     Salsman admitted to using drugs with Friend and told officers, Friend "gets [them] from me." Salsman was charged with possession of a controlled substance with intent to distribute, possession of a controlled substance, possession of a firearm by a restricted person, possession of a dangerous weapon by a restricted person, and possession of drug paraphernalia.

¶4     In his pretrial disclosures, Salsman listed Girlfriend as a potential witness. Because Girlfriend had since been incarcerated in Arizona on murder charges, Salsman's counsel (Counsel) arranged for her to testify by video. But during the trial, Counsel informed the court that Girlfriend would be testifying by phone instead because the Arizona jail could not accommodate a video appearance. Upon the State's stipulation, the court agreed to allow Girlfriend to testify by phone. After a recess on the second day of trial, Counsel explained to the court that the jail had canceled Girlfriend's appearance because Girlfriend's defense attorney had told the jail that Girlfriend would "go in and plead the Fifth." Counsel had contacted Girlfriend's defense attorney,

who confirmed that she "was not going to take a chance with her client" and would not allow her to appear—even just to exercise her right under the Fifth Amendment. Counsel asked the court to order Girlfriend to appear. Noting it had already done so, the court stated it would order that she appear by phone and declared, "[I]f she chooses to invoke the Fifth Amendment, we'll cross that bridge when we get there."

¶5    When it came time for Girlfriend to testify, Counsel informed the court that Girlfriend would not be testifying because the Arizona jail had "cut off" the call due to the lengthy wait time and Girlfriend's need to go to her own court appearance that afternoon. Counsel then requested a continuance "because of [Girlfriend's] unavailability." The State opposed the request, pointing to the repeated instructions from Girlfriend's defense attorney for her to plead the Fifth if she did appear. The court denied the continuance, noting "it appear[ed] there wouldn't be any testimony elicited" because Girlfriend "would invoke her Fifth Amendment right as represented by her defense attorney." Without Girlfriend's testimony, Salsman was the only witness in his defense.

¶6    After the close of the evidence, the court provided instructions to the jury, including instructions to unanimously decide whether the hatchet or hunting knife qualified as a dangerous weapon. The jury was also provided with a definition of a "dangerous weapon" as "an object that in the manner of its use or intended use is capable of causing death or serious bodily injury." *See* Utah Code § 76-10-501(6)(a). The instructions did not include the statutory list of factors to help the jury determine whether a particular item meets this definition. *See id.* § 76-10-501(6)(b). The jury found Salsman guilty on all charges.

ISSUES AND STANDARDS OF REVIEW

¶7    Salsman challenges the district court's refusal to grant a continuance to allow him to secure Girlfriend's appearance. "The

granting of a continuance is at the discretion of the trial judge, whose decision will not be reversed . . . absent a clear abuse of that discretion." *Mackin v. State*, 2016 UT 47, ¶ 33, 387 P.3d 986 (cleaned up). "A district court abuses its discretion when it denies a continuance and the resulting prejudice affects the substantial rights of the defendant, such that a review of the record persuades [this] court that without the error there was a reasonable likelihood of a more favorable result for the defendant." *Id.* (cleaned up).

¶8　　He also argues Counsel provided ineffective assistance in failing to object to the incomplete jury instruction defining a "dangerous weapon." "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Alvarado*, 2023 UT App 123, ¶ 12, 538 P.3d 633 (cleaned up).

## ANALYSIS

### I. Continuance Motion

¶9　　Salsman argues the district court abused its discretion in denying his continuance motion. To convince us he was entitled to a continuance, Salsman must show (1) "that the testimony sought is material and admissible," (2) "that the witness could actually be produced," (3) "that the witness could be produced within a reasonable time," and (4) "that due diligence has been exercised before the request for a continuance." *Mackin v. State*, 2016 UT 47, ¶ 33, 387 P.3d 986 (cleaned up).[1] And he must also

---

1. Salsman suggests a different standard, articulated in *State v. Torres-Garcia*, 2006 UT App 45, 131 P.3d 292, which sets forth different factors a court may consider in ruling on a continuance motion. *See id.* ¶ 18. But the factors in *Torres-Garcia* are applied

(continued…)

show that the denial of the continuance was "a clear abuse of . . . discretion," meaning it resulted in prejudice that affected his substantial rights "such that a review of the record persuades [us] that without the error there was a reasonable likelihood of a more favorable result." *Id.* (cleaned up). Salsman cannot meet this burden.

¶10 Although the district court mistakenly denied the continuance based on the representations from Counsel that Girlfriend would invoke her Fifth Amendment rights rather than on an invocation by Girlfriend herself, the denial does not constitute a clear abuse of discretion because Salsman has not demonstrated that Girlfriend's testimony would have affected the outcome of his case.[2] On appeal, Salsman argues her testimony would have supported his defense that the drugs in his trailer were for "personal use" rather than for distribution. But he proffers no details about what the substance of this testimony would have been, leaving us with pure speculation. And the evidence strongly suggested otherwise. Inside Salsman's trailer, police found 315 grams of methamphetamine (including a large "chunk of meth"), digital scales, a cutting board that tested positive for methamphetamine, and a large quantity of various sizes of cellophane baggies—some of which also contained methamphetamine. Police also found several weapons and a safe containing $14,000 in cash. Given the speculative nature of Girlfriend's testimony and the strength of the evidence

---

"when considering a defendant's request for a continuance based on the State's failure to provide" adequate notice of a witness's testimony, *State v. Samples*, 2022 UT App 125, ¶ 60 n.9, 521 P.3d 526, *cert. denied*, 525 P.3d 1279 (Utah 2023), which is not the situation here.

2. The "attorney for a witness cannot claim a privilege against self-incrimination; he can only advise the witness. In order for the claim to be honored by the court, it must be made by the witness." *State v. White*, 671 P.2d 191, 193 (Utah 1983) (cleaned up).

against Salsman, on the record before us "we cannot see a reasonable likelihood of a more favorable" outcome at trial had the court granted the continuance. *Id*. ¶ 37 (cleaned up). Therefore, the district court did not abuse its discretion in denying his motion.

## II. Jury Instructions

¶11 Salsman argues Counsel provided ineffective assistance in failing to object to the jury instruction regarding the definition of a "dangerous weapon." To prevail on his ineffective assistance claim, Salsman "must show both that Counsel's performance was deficient and that the deficient performance prejudiced the defense." *State v. Beckering*, 2015 UT App 53, ¶ 21, 346 P.3d 672 (cleaned up). "Counsel's performance will not be deemed deficient unless [Salsman] can show that Counsel's representation fell below an objective standard of reasonableness." *Id.* (cleaned up). And to establish prejudice, Salsman must show a "reasonable probability that but for Counsel's errors, the result would have been different." *Id.* ¶ 29 (cleaned up). "In the event it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we will do so without analyzing whether Counsel's performance" was deficient. *Id.* (cleaned up). Here, we need not address Counsel's alleged deficient performance as the failure to object to the jury instruction did not prejudice Salsman.

¶12 The jury was instructed to determine whether the hatchet or hunting knife qualified as a dangerous weapon, and it was provided with the general definition of a "dangerous weapon." The jury instruction quoted the statute, defining a "dangerous weapon" as "an object that in the manner of its use or intended use is capable of causing death or serious bodily injury." Utah Code § 76-10-501(6)(a). The instruction did not include the factors listed in the statute to assist in "determining whether any object, other than a firearm, is a dangerous weapon." *Id*. § 76-10-501(6)(b). These factors are

(i) the location and circumstances in which the object was used or possessed;

(ii) the primary purpose for which the object was made;

(iii) the character of the wound, if any, produced by the object's unlawful use;

(iv) the manner in which the object was unlawfully used;

(v) whether the manner in which the object is used or possessed constitutes a potential imminent threat to public safety; and

(vi) the lawful purposes for which the object may be used.

*Id.* Salsman argues that had the jury been instructed on these statutory factors, it would not have convicted him. We disagree.

¶13 At trial, the jury heard testimony that the hatchet was found stuck into the wall of Salsman's trailer—because he "used the place as a . . . throwing gallery"—and the serrated hunting knife was found lying on the couch. The jury also saw the photos of the hatchet and the hunting knife. Based on this information, the jury could evaluate for itself whether the hatchet or hunting knife was "capable of causing death or serious bodily injury" under section 76-10-501(6)(a). *Cf. State v. Sorenson*, 2023 UT App 159, ¶ 29, 542 P.3d 529 (concluding the "jurors were able to evaluate for themselves whether the tools qualified as dangerous weapons" when the tools were admitted as trial exhibits).

¶14 Adding the six statutory factors to the jury instruction would likely have harmed—not helped—Salsman's case. First, the hatchet and hunting knife were found in the open area of Salsman's trailer, with three people—one of whom was

pregnant—living inside the small space. Salsman testified that he used the wall of the trailer as a "throwing gallery" for the hatchet and other knives. And the trailer was full of methamphetamine, which Salsman and Friend admitted to using. Thus, the location and circumstances in which the hatchet and hunting knife were used (factor 1) indicate that they were capable of causing death or serious bodily injury. *See* Utah Code § 76-10-501(6)(b)(i). Next, the primary purpose of both a hatchet and a hunting knife (factor 2) is to cut. *See id.* § 76-10-501(6)(b)(ii). While these tools certainly have lawful uses (factor 6), *see id.* § 76-10-501(6)(b)(vi), and there is no indication that Salsman had used them unlawfully to produce an injury (factors 3 and 4), *see id.* § 76-10-501(6)(b)(iii), (iv), there was a risk that under these particular circumstances, these objects that were designed to cut posed a "potential imminent threat to public safety" (factor 5), *id.* § 76-10-501(6)(b)(v).

¶15　Thus, we are persuaded that the addition to the jury instruction of the six factors in section 76-10-501(6)(b) would only have reinforced the jury's conclusion that the hatchet or hunting knife qualified as dangerous weapons under section 76-10-501(6)(a). Accordingly, Salsman cannot demonstrate that he was prejudiced by Counsel's failure to object to the jury instruction, and his ineffective assistance claim fails.

## CONCLUSION

¶16　The district court did not abuse its discretion in denying Salsman's continuance motion. Nor did Counsel provide ineffective assistance in failing to object to the jury instruction regarding the definition of a "dangerous weapon." We thus affirm Salsman's convictions.

———————