**2026 UT App 57**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
GERARDO ENRIQUE PEREZ,
Appellant.

Opinion
No. 20240808-CA
Filed April 16, 2026

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 221911282

Emily Adams and Hannah Leavitt-Howell,
Attorneys for Appellant

Derek E. Brown and Jason E. Greene,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JOHN D. LUTHY
concurred.

MORTENSEN, Judge:

¶1     Gerardo Enrique Perez was charged with and convicted of possessing a dangerous weapon as a restricted person. On appeal, he argues that the jury was not properly instructed on what constitutes a "dangerous weapon" and that his counsel's failure to object to the relevant instruction constituted ineffective assistance. We reject his arguments and affirm his conviction.

BACKGROUND[1]

¶2    In August 2022, Perez was an inmate at the Utah State Correctional Facility. He and his cellmate were subject to a routine cell search. After one officer concluded a strip search of Perez, another officer saw Perez remove a shirt from his bed. The officer confiscated the shirt and found a piece of plastic that had been "sharpened to a point"—in other words, a shiv[2]—wrapped inside the shirt. Perez was charged with one count of being a restricted person in possession of a dangerous weapon.



*The Shiv*

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (cleaned up).

2. *See, e.g.*, *Sterling v. State*, 199 N.E.3d 377, 380 (Ind. Ct. App. 2022) (defining "shiv" as "makeshift knife"); *State v. Bulach*, 76 A.2d 692, 693 (N.J. Super. Ct. App. Div. 1950) ("A shiv is a knife.").

¶3     The case proceeded to a jury trial, at which the State called a single witness: the officer who found the shiv. The officer testified that, based on his "training and experience," the shiv was a "dangerous weapon" because such objects are used for protection and to hurt others. He further testified that he had seen inmates use similar objects that had caused "severe injuries requiring hospitalization" and "a lot of blood loss." The State also introduced a video showing Perez handing the shirt to the officer.

¶4     Perez's lawyer (Counsel) then briefly cross-examined the officer. Part of Counsel's strategy entailed convincing the jury to convict on the lesser included offense of possession of contraband in a correctional facility. To that end, Counsel asked the officer to define "contraband." The officer testified that contraband refers to "anything that an inmate should not have." After Counsel concluded his cross-examination, the State briefly questioned the officer on redirect examination. The officer was then excused, and the State rested. Perez elected not to testify and called no witnesses.

¶5     Before closing arguments, the jury was instructed on the elements for the dangerous weapon charge and the lesser included offense of possession of contraband in a correctional facility. Another instruction defined a "dangerous weapon" as "an item that in the manner of its use or intended use is capable of causing death or serious bodily injury." The jury was also instructed,

> The following factors shall be used in determining whether an item, object or thing not commonly known as a dangerous weapon is a dangerous weapon:
>
> a.  the character of the instrument, object, or thing;
>
> b.  the character of the wound produced, if any;

      c.  the manner in which the instrument, object, or thing was used; and

      d.  the other lawful purposes for which the instrument, object, or thing may be used.

As set forth below, the instruction omitted three of the statutory factors for a factfinder to consider when determining whether any object other than a firearm constitutes a dangerous weapon.

¶6     During its closing argument, the State asserted that Perez knew the shiv was of a dangerous "character" because it was "sharp" and it could "pierce things" and "people." The State argued further that the shiv could cause "serious damage"—or, in other words, a serious "wound." The State also asserted that Perez's apparent attempt to hide the shiv from the officer led to the obvious inference of how it could have been used, specifically that it was concealed and meant to be concealed. This led to the additional inference that Perez knew he could not have the shiv in the prison, according to the State. Finally, the State argued that the shiv had no lawful purpose and that its intended use was for "causing death or serious bodily injury."

¶7     In response, Counsel conceded that Perez possessed contraband and was therefore guilty of the lesser included offense. He also conceded that the shiv was "definitely capable of causing serious bodily injury." But, he argued, that was only "half the equation." The other half related to "manner of use" and "intended use." Counsel asked the jury to find Perez not guilty on the dangerous weapon charge because the State failed to prove that he used or intended to use the shiv.

¶8     A little less than an hour after the case was submitted to the jury, Perez was convicted.

ISSUE AND STANDARD OF REVIEW

¶9   Perez argues that Counsel rendered ineffective assistance by failing to object to the jury instruction on what constitutes a "dangerous weapon." "Where, as here, a defendant raises [an ineffective assistance] claim for the first time on appeal, we decide it as a matter of law." *West Valley City v. Drawn*, 2025 UT App 198, ¶ 14, 583 P.3d 1129.

ANALYSIS

¶10   Perez argues that the State's burden was "effectively lowered" in this case because (1) the jury instruction omitted some of the statutory factors for the jury to consider in its determination of whether the shiv was a dangerous weapon and (2) the jury instruction included language not found in the statute that could arguably have enabled the jury to disregard the factors altogether. Perez maintains that Counsel's failure to object to the instruction constituted ineffective assistance because his entire defense was that the shiv was "merely contraband." We are not convinced.

¶11   Prevailing on an ineffective assistance claim requires a defendant to "show both that counsel's performance was deficient and that the deficient performance prejudiced the defense." *State v. Salsman*, 2024 UT App 92, ¶ 11, 553 P.3d 66 (cleaned up), *cert. denied*, 558 P.3d 88 (Utah 2024). Where a defendant cannot make the required showing on one of the prongs, we need not address the other prong. *See State v. Lolani*, 2025 UT App 138, ¶ 16, 581 P.3d 1024, *cert. denied*, Mar. 12, 2026 (No. 20251386). Here, we elect to resolve Perez's claim on prejudice grounds. Establishing prejudice requires a defendant to demonstrate "a reasonable probability that but for counsel's errors, the result would have been different." *Salsman*, 2024 UT App 92, ¶ 11 (cleaned up). In addressing a defendant's argument on prejudice, we must consider the counterfactual universe in which the trial proceeded

without the asserted errors and ask whether it is reasonably likely that a different result would have obtained but for those errors. *State v. Ellis*, 2018 UT 2, ¶ 42, 417 P.3d 86. If the answer to that question is "no," then the defendant has failed to establish prejudice. *Id.*

¶12 Under Utah law, it is a third-degree felony for a "category I restricted person" to "intentionally or knowingly" purchase, transfer, use, carry, or otherwise possess "a dangerous weapon" that "is not a firearm." Utah Code § 76-11-305(2)(a), (2)(b)(ii), (3)(a).[3] A dangerous weapon other than a firearm is "an object that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 76-11-101(3)(a)(ii). The applicable statute enumerates six factors for a factfinder to consider "in determining whether any object, other than a firearm, is a dangerous weapon." *Id.* § 76-11-101(3)(b). Those factors include:

> (i) the location and circumstances in which the object was used or possessed;
>
> (ii) the primary purpose for which the object was made;
>
> (iii) the character of the wound, if any, produced by the object's unlawful use;
>
> (iv) the manner in which the object was unlawfully used;

---

3. In the time since Perez was charged, the relevant statutes have been renumbered. *See* Utah Code §§ 76-10-501(6), -503(2) (2022). Because they remain substantively the same, we cite the current versions for convenience.

(v) whether the manner in which the object is used or possessed constitutes a potential imminent threat to public safety; and

(vi) the lawful purposes for which the object may be used.

*Id.*

¶13 Here, the jury was instructed to consider three of the applicable statutory factors in determining whether the shiv was a dangerous weapon. The jury considered the following factors, each of which roughly corresponded to one of the statutory factors:

- "the character of the wound produced, if any" roughly corresponds to "the character of the wound, if any, produced by the object's unlawful use," *see id.* § 76-11-101(3)(b)(iii);

- "the manner in which the instrument, object, or thing was used" corresponds to the "the manner in which the object was unlawfully used," *see id.* § 76-11-101(3)(b)(iv); and

- "the other lawful purposes for which the instrument, object, or thing may be used" roughly corresponds to "the lawful purposes for which the object may be used," *see id.* § 76-11-101(3)(b)(vi).[4]

---

4. Perez does not argue that the minor differences between the statute and the jury instruction on these three factors led to an inaccurate statement of the law. *See State v. Baize*, 2019 UT App 202, ¶ 16, 456 P.3d 770 (explaining that "[j]ury instructions require no specific form" as long as they "accurately convey the law").

The jury was also instructed to consider the "character of the instrument, object, or thing."[5] In addition, the instruction suggested that the jury did not need to consider the factors if the object was "commonly known as a dangerous weapon," language that is not found in the statute. *See id.* § 76-11-101(3)(b). Finally, the instruction omitted three of the statutory factors, including "the location and circumstances in which the object was used or possessed," "the primary purpose for which the object was made," and "whether the manner in which the object is used or possessed constitutes a potential imminent threat to public safety." *See id.* § 76-11-101(3)(b)(i), (ii), (v).

¶14 Perez claims that the apparent defects in the jury instruction matter, arguing that "the State's case against [him] was that he must be guilty of possession of a dangerous weapon because [the officer] claimed that every object like the [shiv] had been used like a dangerous weapon and thus [Perez] must have known it was a dangerous weapon." Further compounding the issue, he argues, was the "not commonly known" language in the jury instruction because it "diminished the importance . . . of analyzing" his intent and enabled the jury to "focus[] on the [shiv] alone." In other words, Perez maintains that the instruction's incompleteness (the omitted statutory factors) and incorrectness (the "commonly known" language) unfairly distracted the jury from what he claims was a lack of evidence of his "specific intent." For these reasons, Perez asserts that there was a reasonable probability that the jury, properly instructed, would have acquitted on the dangerous weapon charge and instead convicted on the contraband charge.

---

5. While this factor does not strictly correspond to any of the enumerated factors, it seems to relate to "the primary purpose for which the object was made" factor. *See* Utah Code § 76-11-101(3)(b)(ii). To the extent that Perez suggests that the factors are dissimilar, the dissimilarity doesn't affect our analysis.

¶15    We readily acknowledge that the jury instruction here should have tracked the statute.[6] *See generally, e.g., State v. Beckering*, 2015 UT App 53, ¶ 23, 346 P.3d 672 ("To determine if jury instructions correctly state the law, we look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." (cleaned up)). But in considering a hypothetical universe where the instruction properly stated the applicable law, we remain unconvinced that the jury would have done anything other than convict Perez.

¶16    In *State v. Salsman*, 2024 UT App 92, 553 P.3d 66, this court addressed a similar argument on appeal addressing the same statute. There, the police searched the defendant's trailer and found, among other things, "several 'steak-type knives,' . . . a hatchet sticking in the wall . . . , and a twelve-inch serrated hunting knife in a sheath." *Id.* ¶ 2. Officers also found more than 300 grams of methamphetamine. *Id.* ¶ 10. The defendant was convicted of, among other charges, possession of a dangerous weapon by a restricted person. *Id.* ¶ 6. On appeal, he argued that his counsel was ineffective in failing to object to a jury instruction that defined "a 'dangerous weapon' as 'an object that in the manner of its use or intended use is capable of causing death or serious bodily injury'" but omitted all six of the applicable statutory factors. *Id.* ¶¶ 6, 12. He argued that he would not have been convicted had the jury been properly instructed. *Id.* ¶ 12.

¶17    On appeal, this court rejected the defendant's argument, holding that "[a]dding the six statutory factors to the jury

---

6. Of course, in some circumstances, inclusion of statutory language renders a jury instruction incorrect as a matter of law. *See, e.g., State v. Lolani*, 2025 UT App 138, ¶¶ 12–13, 19, 581 P.3d 1024 (holding as a matter of law that applicable statute's language that "circumstances not amounting to murder" should not have been in jury instruction on lesser included offense of homicide by assault), *cert. denied*, Mar. 12, 2026 (No. 20251386). But we see no issue on that front in this case.

instruction would likely have harmed—not helped—[his] case." *Id.* ¶ 14. We noted that "the hatchet and hunting knife were found in the open area of [the] trailer, with three people—one of whom was pregnant—living inside the small space," that the defendant "testified that he used the wall . . . as a 'throwing gallery' for the hatchet and other knives," and that "the trailer was full of methamphetamine, which [he] admitted to using." *Id.* For these reasons, we determined that "the location and circumstances in which the hatchet and hunting knife were used"—or "factor 1," so called based on its place in the statute—"indicate[d] that they were capable of causing death or serious bodily injury." *Id.* We also noted,

> The primary purpose of both a hatchet and a hunting knife (factor 2) is to cut. While these tools certainly have lawful uses (factor 6), and there is no indication that [the defendant] had used them unlawfully to produce an injury (factors 3 and 4), there was a risk that under these particular circumstances, these objects that were designed to cut posed a potential imminent threat to public safety (factor 5).

*Id.* (cleaned up).

¶18 We think *Salsman* is helpful here. It's true that the instruction in that case did not include the "commonly known as a dangerous weapon" language. *See id.* ¶ 6. However, as in *Salsman*, a reasonable consideration of the factors omitted from the jury instruction in this case suggests that the inclusion of those factors would have hurt Perez's defense. The jury instruction here omitted "factor 1," which refers to "the location and circumstances in which the object was used or possessed." *See* Utah Code § 76-11-101(3)(b)(i). Had factor 1 been included in the instruction, however, it almost certainly would have gone against Perez. It's true that the State didn't offer evidence that the shiv was actually used. But it did put on evidence that Perez had attempted to conceal the shiv from the authorities and that Perez

was not allowed to possess the shiv. The officer also testified that the shiv was a "dangerous weapon" that inmates use, both for protection and to hurt others. Therefore, factor 1 clearly weighed in favor of a finding that the shiv was a dangerous weapon. *See Salsman*, 2024 UT App 92, ¶ 14 (concluding that "the location and circumstances in which the hatchet and hunting knife were used . . . indicate that they were capable of causing death or serious bodily injury" when the defendant used the wall of the trailer in which he lived with two other people as a "throwing gallery"); *cf. State v. Holsomback*, 2022 UT App 72, ¶ 31, 513 P.3d 82 (explaining that the defendant's concealment of a shiv in his cell's toilet supported his conviction for obstruction of justice after he stabbed another inmate three times); *United States v. Roche*, 443 F.2d 98, 99 (10th Cir. 1971) (holding that authorities' discovery of inmate's "false phallic appendage attached to his body" that had concealed an improvised firearm readily supported inference that inmate had "knowingly and willfully convey[ed] from place to place . . . a thing designed to kill, injure or disable an employee or inmate" and affirming inmate's conviction under statute barring such conduct).

¶19 The instruction also omitted factor 2—"the primary purpose for which the object was made." *See* Utah Code § 76-11-101(3)(b)(ii). As with factor 1, however, factor 2 would have harmed Perez's case had it been included in the instruction. The size and shape of the shiv, the officer's testimony, and, most importantly, common sense, clearly weigh in favor of a finding that the shiv was a dangerous weapon because it was made for the primary purpose of stabbing.[7] *See Salsman*, 2024 UT App 92, ¶ 14 (explaining that "the primary purpose of both a hatchet and a hunting knife . . . is to cut" and concluding that factor 2 weighed in favor of a finding that the hatchet and hunting knife were

---

7. Perez suggests the shiv, pictured in paragraph 2, was meant to be used to "cut materials for arts and crafts . . . , for personal hygiene . . . , or in activities like gardening or whittling" as opposed to being used to stab. We see no possibility that the jury would have believed such an assertion.

dangerous weapons); *see also Jason v. Tanner*, 938 F.3d 191, 198–99 (5th Cir. 2019) (describing the myriad "creative" implements prisoners have concocted to injure others, including "shanks, toothbrush shivs, ruler shivs, ladle shivs, tightly-rolled-newspaper spears (successfully used to kill a guard in 1985), [and] broken black binder clips" (cleaned up)); *Herzog v. Vail Resorts, Inc.*, 2025 UT App 69, ¶ 55, 572 P.3d 402 ("Juries are . . . allowed to use common sense and make reasonable inferences.").

¶20 Lastly, the instruction omitted factor 5, which asks the factfinder to consider "whether the manner in which the object is used or possessed constitutes a potential imminent threat to public safety." *See* Utah Code § 76-11-101(3)(b)(v). The unrefuted evidence showed that Perez had concealed the shiv from the authorities and that it was readily capable of posing an imminent threat to other inmates and prison staff. Indeed, the officer testified that he had seen inmates use similar objects to cause "severe injuries requiring hospitalization" and "a lot of blood loss." For these reasons, factor 5 also would have worked against Perez had it been included in the jury instruction. *See Salsman*, 2024 UT App 92, ¶ 14 (concluding that the defendant's hunting knife and hatchet "posed a potential imminent threat to public safety" (cleaned up)).

¶21 This leaves the "not commonly known" language, the inclusion of which was erroneous as a matter of law. *Cf. State v. Lolani*, 2025 UT App 138, ¶ 19, 581 P.3d 1024 (explaining that "'under circumstances not amounting to' clauses (when accompanied by an associated list of other crimes) do not constitute elements of the actual crime that follows" and that the jury instruction with such language incorrectly stated the law (cleaned up)), *cert. denied*, Mar. 12, 2026 (No. 20251386). It is certainly possible that the jurors interpreted this language in a way that would have allowed them to disregard the factors included in the instruction if they believed that a shiv is commonly known as a dangerous weapon. Therefore, we consider the hypothetical universe where (1) the jury instruction did not include this language and (2) the jury affirmatively

considered each of the six statutory factors. Stated otherwise, we assess both the factors that were included in the instruction and the additional factors that the jury would have been instructed to consider had the instruction properly stated the law.

¶22   The statute tasks the factfinder with considering "the lawful purposes for which the object may be used," Utah Code § 76-11-101(3)(b)(vi), or what the *Salsman* court referred to as factor 6, *see* 2024 UT App 92, ¶ 14. Perez concedes on appeal—as he must—that "there is no 'lawful' use for contraband in prison." This fact is directly probative of intent with the shiv because it stands to reason that an inmate can distinguish between mere contraband and a dangerous object like a shiv. Accordingly, factor 6 weighs in favor of a finding that the shiv was a dangerous weapon.

¶23   Finally, factors 3 and 4 correspond to "the character of the wound, if any, produced by the object's unlawful use" and "the manner in which the object was unlawfully used," respectively. *See* Utah Code § 76-11-101(3)(b)(iii), (iv). In other words, these factors task the jury with considering whether the defendant actually used the object. Because there is no indication that Perez used the shiv, factors 3 and 4 weigh against a finding that the shiv was a dangerous weapon. *See Salsman*, 2024 UT App 92, ¶ 14. But they are outweighed by the other statutory factors, *see* Utah Code § 76-11-101(3)(b)(i)–(ii), (v)–(vi), which overwhelmingly point to the conclusion that the shiv was a dangerous weapon, *see Salsman*, 2024 UT App 92, ¶ 14 (suggesting that imminent threat to public safety of a hatchet and throwing knife, which "were designed to cut," far outweighed that they had "lawful uses" and that there was no indication the defendant "had used them unlawfully to produce an injury").

¶24   For these reasons, we are confident that had the jury instruction properly stated the law, Perez would have been convicted on the dangerous weapon charge. Thus, we are not persuaded that he was prejudiced by Counsel's allegedly

deficient performance in this case. Consequently, his ineffective assistance claim does not succeed.

## CONCLUSION

¶25 Perez has not demonstrated that he was prejudiced by Counsel's failure to object to the jury instruction, so his ineffective assistance claim fails. Affirmed.

―――――――